The MARKETING GROUP, INC., Plaintiff,

v.

SUCCESS DEVELOPMENT INTERNATIONAL, INC., Defendant.

No. Civ.A. 98–2582–GTV.

United States District Court, D. Kansas.

Feb. 18, 1999.

Paul D. Sinclair, Andrew S. Mendelson, Sinclair, Sawyer, Thompson, Haynes & Cowing, P.C., Kansas City, MO, for Marketing Group, Inc., plaintiff.

James Borthwick, Blackwell Sanders Peper Martin, LLP, Kansas City, MO, Reed W. Grimm, Milam Otero Larsen, Dawson & Traylor, P.A., Jacksonville, FL, for Success Development Intern., Inc., defendant.

## MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff The Marketing Group, Inc. brings this diversity action alleging that defendant Success Development International, Inc. breached a service agreement. The case is before the court on defendant's motion to dismiss for lack of personal jurisdiction (Doc. 4). For the reasons set forth in this memorandum and order, defendant's motion is denied.

### I. BURDEN OF PROOF

In a diversity action, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *See Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir.1984). However, the burden of proof varies depending upon the procedure employed to determine the issue. "If a motion to dismiss for lack of [personal] jurisdiction is submitted prior to trial on the basis of affidavits and other written materials, plaintiff is initially required only to make a prima facie showing to avoid dismissal." *Thompson v. Chambers*, 804 F.Supp. 188, 191 (D.Kan.1992) (citing *F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992)). "[T]o be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed.R.Civ.P. 56(e); i.e., they must be made on personal knowledge, set forth such facts as would be admissible as evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* (citing *F.D.I.C.*, 959 F.2d at 175 n. 6). If the parties submit conflicting affidavits, as in this case, the court must resolve all factual disputes in the plaintiff's favor. *See id.*

### II. FACTUAL BACKGROUND

Plaintiff is a Kansas corporation with its principal place of business in Leawood, Kansas. Defendant is a Florida corporation with its principal place of business in Jacksonville, Florida. In August or September 1997, defendant's President Ron LeGrand contacted H. Brad Antin, President of The Marketing Group, Inc., and requested that plaintiff create a marketing plan for defendant. In December 1997, the parties engaged in a series of negotiations regarding plaintiff's creation of the marketing plan. As a part of this negotiation process, defendant faxed several proposals and counter-proposals to plaintiff's Leawood, Kansas office. Plaintiff maintains that the marketing plan and its terms were confirmed by subsequent verbal communications, thereby creating a contract between the parties. Although the parties agreed upon the terms of the contract, the contract itself was never approved by defendant's board of directors.

Pursuant to the parties' agreement, plaintiff created a radio program and five direct-marketing letters to market defendant's product. According to the affidavit of Mr. Antin, the majority of the work for the radio program, including the writing of the script, was performed at plaintiff's Kansas office. During the writing of the script, Mr. Antin claims that he had ongoing telephone discussions with defendant's employees. After the script was completed in Kansas, Mr. Antin traveled to Florida to record the program.

Mr. Antin also claims that the five direct-marketing letters were created almost entirely at the plaintiff's Kansas office. Mr. Antin had regular contact with defendant during the creation of these letters, and preliminary and final drafts of the letters were faxed or e-mailed from Kansas to Florida. The completed marketing letters were used by defendant and mailed to its potential customers.

Mr. Antin states in his affidavit that 90% of the total work performed by plaintiff for defendant was performed in Kansas. According to Mr. Antin, the work had to be performed in Kansas because the computer, equipment, and reference materials used to create the program and letters were located in plaintiff's Kansas office.

### III. DISCUSSION

In a suit in federal court based on diversity of citizenship, the law of the forum state determines personal jurisdiction over a non-resident defendant. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994). In Kansas, a two-step analysis is used to determine whether a court has personal jurisdiction over a defendant. First, the court must determine whether it has jurisdiction under the Kansas long-arm statute, K.S.A. § 60–308(b). The Kansas long-arm statute states that a non-resident defendant submits to the jurisdiction of the state of Kansas by, *inter alia*, transacting any business within the state or entering into a contract with a resident of Kansas to be performed in part or in whole in Kansas. *See* K.S.A. § 60–308(b)(1) and (5). Second, the court must determine whether the exercise of jurisdiction comports with the constitutional guarantee of due process. *Federated Rural Elec.*, 17 F.3d at 1304–05. "In Kansas, these inquiries are for all intents and purposes the same because the Kansas long-arm statue, K.S.A. § 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader*, 905 F.Supp. 933, 935–36 (D.Kan.1995); *see also Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990). The court, therefore, proceeds directly to the constitutional issue.

Due process requires that a defendant must have certain minimum contacts with the forum state sufficient to guarantee that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The sufficiency of the contacts depends on the type of personal jurisdiction that the forum seeks to assert—specific jurisdiction or general jurisdiction. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir.1996). In this case, defendant argues that the assertion of either specific or general jurisdiction would violate its due process rights. Plaintiff concedes that the court does not have general jurisdiction over defendant. Therefore, the court will focus on the specific jurisdiction issue.

"For purposes of personal jurisdiction, the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State, and the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Equifax Servs.*, 905 F.2d at 1357 (citations and quotations omitted). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant ... [the minimum contacts requirement] is satisfied if the defendant has

'purposely directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. 2174 (citations and quotations omitted).

■ The Supreme Court has rejected the notion that an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum. *See id.* at 478, 105 S.Ct. 2174. Instead, the Court has applied a highly realistic approach that recognizes that a contract is " 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Id.* (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). Accordingly, the parties' prior negotiations, their contemplated future consequences, their actual course of dealing, and the terms of the contract must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id.*

■ In this case, all of defendant's relevant contacts with Kansas relate to the formation and execution of the parties' service agreement. Defendant contends that the contract is its only connection to Kansas, that it did not perform any business activities in Kansas, and that there is no evidence in the record to support an inference that defendants knowingly agreed that any part of the contract was to be performed in Kansas. The court disagrees.

From the record before the court, it is apparent that defendant purposely solicited plaintiff in Kansas and voluntarily entered into a contract with plaintiff that was to be performed, at least in part, in Kansas. During the parties' course of dealings, defendant faxed its suggestions for and objections to the proposed contract to Kansas, and remained in consistent contact with plaintiff while the contract was being performed in Kansas. Furthermore, the court concludes that when defendant entered into the contract, it should have known that some or most of the contract performance would occur in the Kansas office. Indeed, performance of the contract mandated that plaintiff utilize its computers, equipment, and reference materials located in its Kansas office. Finally, when defendant refused to make contractually-required payments to plaintiff, it caused foreseeable injuries to a Kansas corporation. For these reasons, it is reasonable for defendant to be haled into a Kansas court to answer for such injuries. *See Burger King*, 471 U.S. at 480, 105 S.Ct. 2174. Accordingly, the court concludes that the quality and nature of defendant's contacts with the Kansas corporation cannot be said to be random, fortuitous, or attenuated, *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and that plaintiff has made a prima facie showing establishing personal jurisdiction over defendant.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to dismiss for lack of personal jurisdiction (Doc. 4) is denied.

**IT IS SO ORDERED.**